UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
FAIVELEY TRANSPORT USA, INC.,          :
FAIVELEY TRANSPORT NORDIC AB,          :
FAIVELEY TRANSPORT AMIENS S.A.S, and   :
ELLCON NATIONAL, INC.,                 :
                                       :
             Plaintiffs,               :
                                       :
             -v-                       :        10 Civ. 4062 (JSR)
                                       :
WABTEC CORPORATION,                    :            OPINION
                                       :
             Defendant.                :
------------------------------------- x



JED S. RAKOFF, U.S.D.J.

        Plaintiffs Faiveley Transport USA, Inc., Faiveley Transport

Nordic AB, Faiveley Transport Amiens S.A.S., and Ellcon National,

Inc. (collectively the "Faiveley plaintiffs") bring this action

against defendant Wabtec Corporation ("Wabtec") asserting various

claims based on Wabtec's alleged misappropriation of certain trade

secrets from an entity affiliated with plaintiffs, Faiveley Transport

Malmö AB ("Malmö").  On June 25, 2010, Wabtec moved to dismiss the

plaintiffs' amended complaint pursuant to Federal Rules of Civil

Procedure 12(b)(6) and 19.  The Court received full briefing on these

motions, and following oral argument on August 18, 2010, granted

Wabtec's application to submit a short letter setting forth

additional authority in support of their motions and permitted

plaintiffs to submit a short letter in response thereto.  After

careful consideration of the parties' submissions, the Court, by

                                1

Order dated August 30, 2010, denied Wabtec's motions in their entirety.  This Opinion provides the reasons for that ruling.

The instant action traces back to earlier litigation between Malmö and Wabtec.  As part of that litigation, this Court denied Malmö's petition for a preliminary injunction prohibiting Wabtec from undertaking various activities pending the resolution of Malmö and Wabtec's dispute before an arbitral tribunal of the International Chamber of Commerce (the "Tribunal") located in Sweden.  See In re Faiveley Transport Malmo AB. 2009 WL 3270854 (S.D.N.Y. Oct. 7, 2009).  On December 21, 2009, the Tribunal entered an award in Malmö's favor, ordering both monetary relief and injunctive remedies.  Amend. Compl. ("Compl.") ¶¶ 32-44; see Winters Decl. 6/25/2010, Ex. 1 ("Award").  The Tribunal found, among other things, that Wabtec had misappropriated Malmö's trade secrets and that its process of reverse engineering those trade secrets was tainted.  Compl. ¶¶ 38-39.  Malmö moved for confirmation of the Tribunal's award, and following briefing, this Court confirmed the award.  See In re Faiveley Transport Malmo AB. No. 58, 08 Civ. 3330 (S.D.N.Y. May 10, 2010).

During the arbitration between Malmö and Wabtec, the parties disputed whether Malmö should be able to assert claims and recover damages on behalf of the Faiveley plaintiffs.  See Award ¶ 552.  The Tribunal concluded that, as the sole claimant in the arbitration, Malmö could not collect damages based on injuries suffered by other

Faiveley affiliates.  Id. ¶¶ 881-82.  Though the Tribunal awarded
damages to Malmö of approximately $3.9 million, it noted that the
entities most harmed by Wabtec's misappropriation of Malmö's trade
secrets were the Faiveley plaintiffs, specifically Faiveley USA.  See
id. ¶ 883.

        Pursuant to the Tribunal's deliberations as to whether it
could properly award damages to Malmö based on injuries suffered by
other Faiveley entities, both the Faiveley plaintiffs and Wabtec made
representations to the Tribunal that are in considerable tension with
their statements to the Court in the instant action.  In the course
of (unsuccessfully) trying to persuade the Tribunal to award damages
to Faiveley plaintiffs, Xavier de Lavallade, the general counsel of
Faiveley Transport S.A. ("Faiveley Transport") -- parent company of
both the Faiveley plaintiffs and Malmö -- submitted a sworn letter
purporting to "confirm" that an award entered against Malmö would
have res judicata effect as against the Faiveley plaintiffs.  See
Winters Decl., 6/25/2010, Ex. 3 ("de Lavallade letter").  By
contrast, Wabtec specifically represented to the Tribunal that the
Faiveley plaintiffs would not be barred by res judicata from pursuing
their damages claims in a separate proceeding.  Mancini Decl.,
7/26/10, Ex. 2, ¶ 5.11.8.20.  The Tribunal agreed with Wabtec on this
point, indicating that, notwithstanding the Tribunal's decision, the

Faiveley plaintiffs would still be entitled to seek damages from Wabtec in another action.  Award ¶¶ 547, 882.  This is that action.

In their complaint, the Faiveley plaintiffs allege the following.  The plaintiffs are, respectively, New York, Swedish, French, and New York corporations that produce, sell, and service products for freight and passenger railway systems.  Compl. ¶¶ 2-5.  Wabtec is a Delaware corporation that manufactures products for locomotives, freight cars, and passenger cars.  Id. ¶ 6.  In November 2004, Faiveley Transport acquired a company known as SAB Wabco Group AB ("SAB"), which designed and manufactured brake equipment and other components of railway cars.  Id. ¶¶ 9, 12.  In a license agreement executed on December 31, 1993 ("license agreement"), SAB licensed the intellectual property rights to the products that are the subject of this litigation -- the Brake Friction Cylinder, the PB actuator, and the PBA actuator (collectively, the "Products") -- to a corporation known as Wabco (the predecessor to Wabtec).  Id. ¶¶ 86-87.  This license agreement provided Wabco with the rights to manufacture, sell, and distribute the Products in North America until the license agreement was terminated in December 2004. Id. ¶ 97.

Malmö is the successor-in-interest to SAB's intellectual property rights in the Products.  Id. ¶¶ 14, 88.  Malmö conveyed these rights to various Faiveley affiliates, including the Faiveley plaintiffs.  Id. ¶¶ 5, 14-18. Accordingly, from December 2004,

Faiveley plaintiffs have enjoyed the exclusive rights to manufacture, use, sell, assemble, and market the Products in North America.  Id. ¶ 100.

The amended complaint alleges that Wabtec, despite its awareness of the Faiveley plaintiffs' rights with respect to the Products, continued to represent to Faiveley plaintiffs' customers that the Products belonged to Wabtec.  Id. at ¶¶ 101-103.  Moreover, according to the complaint, Wabtec's representations caused considerable injury to Faiveley plaintiffs, including the loss of several lucrative contracts with various municipal transit authorities.  Id. at ¶¶ 117-129.

Based on these allegations, the Faiveley plaintiffs' amended complaint asserts five causes of action against Wabtec for: misappropriation of trade secrets;[1] unfair competition; tortious interference with business relations; tortious interference with plaintiffs' prospective economic advantage; and unjust enrichment. Wabtec moved to dismiss the complaint in its entirety under Rule 12 (b)(6), alleging that: plaintiffs had waived their right to bring this action; the action was barred by res judicata; the relief sought in this action would constitute an impermissible collateral attack on the Tribunal's award; and that each of plaintiffs individual causes of action failed to state a claim.  Wabtec also moved to dismiss the

---

[1] The misappropriation claim is brought by plaintiffs Nordic, Amiens, and Ellcon.

complaint under Rule 19 for failure to join Malmö, an allegedly

indispensible party.  For the following reasons, the Court found all

of Wabtec's claims to lack merit, and accordingly, by Order dated

August 30, 2010, dismissed the motion in its entirety.

The Court first turns to Wabtec's threshold assertion that

Faiveley plaintiffs have waived their right to assert any claims

against Wabtec.  Wabtec bases this argument on the statement

submitted by Xavier de Lavallade, Faiveley Transport's general

counsel, to the Tribunal, which stated that:

> If and to the extent that an award in the above mentioned
> Arbitration has res judicata effect on [Malmö], I also confirm
> that the same res judicata effect shall apply also to each of
> the [Faiveley plaintiffs].  de Lavallade letter at 2.

Wabtec alleges that this statement constitutes a knowing and

intentional waiver of plaintiffs' right to bring this action.

The Court concludes that de Lavallade's witness statement,

regardless of its substantive import, is not properly considered by

the Court on a motion to dismiss.  Subject to certain exceptions,

none of which are applicable to this case, the Court "is normally

required to look only to the allegations on the face of the

complaint" when adjudicating a motion to dismiss.  Roth v. Jennings,

489 F.3d 499, 509 (2d Cir. 2007).  Accordingly, the Court generally

cannot consider affidavits and exhibits on a motion to dismiss.  See

id. (Courts may consider documents outside the pleadings on a motion

to dismiss if they are attached to, incorporated by reference in, or

6

integral to, the complaint); Kopec v. Coughlin, 922 F.2d 152, 153 (2d Cir. 1991) (Courts may consider affidavits and exhibits to a motion to dismiss if it converts the motion to one for summary judgment, and allows the non-moving party an opportunity to submit evidence in opposition). The Court first observes that de Lavallade's witness statement is not attached to, or referenced in, plaintiffs' complaint. Moreover, the Court concludes that the witness statement is not integral to the complaint, as it does not relate to the substance of plaintiffs' claims. Cf. Roth, 489 F.3d at 509 (holding that the document purportedly containing the alleged fraudulent misrepresentation is "integral to" a complaint alleging fraud).

Further, the Court concludes that, even if the Court were to consider the witness statement, Wabtec's waiver argument would still fail. Under applicable New York law, one's intent to relinquish one's legal rights must be "clear, unmistakable, and without ambiguity" in order to constitute a waiver of those rights. RST (2005) Inc. v. Research in Motion Ltd., 2008 WL 5416379, at *7 (S.D.N.Y. Dec. 17, 2008); Onanuga v. Pfizer, Inc., 369 F.Supp.2d 491, 499 (S.D.N.Y. 2005). Read in context, and taking all inferences in the light most favorable to plaintiffs (as the non-moving party in a motion to dismiss), the Court concludes that the letter was not intended as a general relinquishment of Faiveley plaintiffs' legal rights. Rather, the Court interprets the letter's language regarding

the res judicata effect of the Tribunal's decision as referring to
the state of affairs that would have resulted if the Tribunal had
awarded damages to Malmö on behalf of the Faiveley plaintiffs, which
it did not.

Next, Wabtec argues that plaintiffs' claims are barred by
res judicata.  To establish that a claim is precluded under the
doctrine of res judicata, Wabtec must show, inter alia, that "the
previous action involved the [parties] or those in privity with
them."[2]  Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-
85 (2d Cir. 2000) (citation omitted).  The general rule of privity
for purposes of res judicata "is that one whose interests were
adequately represented by another vested with the authority of
representation is bound by the judgment, although not formally a
party to the [action]."  Colonial Acquisition P'ship v. Colonial at
Lynnfield, Inc., 697 F.Supp. 714, 718 (S.D.N.Y 1988).  The award
makes clear that Faiveley plaintiffs neither actively participated
nor authorized Malmö to represent their interests in the arbitration.
Award ¶ 881 ("[Malmö] has not submitted any [evidence] that [Faiveley
plaintiffs] would have authorized . . . [Malmö] to recover the

---

[2] Res judicata is a legal matter subject to the Court's
determination.  See, e.g., In re Marsh & McLennan Cos., Inc. Sec.
Litig., 536 F.Supp.2d 313, 317 (S.D.N.Y. 2007).  As such, contrary to
Wabtec's assertions, Def. Mem. at 5, res judicata cannot be
established merely by a party claiming that it applies, even if doing
so was against that party's interests.

damages suffered by themselves"); see id. at ¶ 552 (Wabtec
acknowledging the same).

Further, Wabtec has proffered no support for its contention
that Faiveley plaintiffs were obligated to either assign their claims
to Malmö pursuant to the arbitration or lose their right to recover
on those claims in another action.  See Def. Letter Br. 8/23/2010.
The only case Wabtec cites for this proposition is readily
distinguishable from the instant action.  See Fried v. Brevel Motors,
Inc., 666 F.Supp. 28 (E.D.N.Y 1987).  Notably, in Fried, the same
entity attempted to pursue the same claims in both arbitration and
district court, albeit through a trustee in the latter action, while
the Faiveley plaintiffs and Malmö are distinct legal entities.  See
id. at 29.  Moreover, under Swedish law, which governed the
arbitration, a third party cannot invoke an arbitration agreement for
its benefit or otherwise interfere with an arbitration between
contracting parties.  See Pl. Rule 44.1 Notice, Ex. A.  Given that
the Tribunal found that the arbitration agreement was strictly
between Malmö and Wabtec, the Faiveley plaintiffs were, in fact,
barred from participating in the arbitration.  Award ¶ 877.  On the
basis of the above, the Court concluded that the Faiveley plaintiffs'
claims are not foreclosed by res judicata.

Alternatively, the Court concludes that Wabtec is judicially
estopped from arguing that res judicata bars plaintiffs' claims in

9

this action, as that argument is directly contrary to arguments
Wabtec made and prevailed on during the arbitration.  Judicial
estoppel serves to "prevent[] a party from prevailing in one phase of
a case on an argument and then relying on a contradictory argument to
prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n.
8 (2000).  In New Hampshire v. Maine, the Supreme Court observed that
while "[t]he circumstances under which judicial estoppel may
appropriately be invoked are probably not reducible to any general
formulation of principle," there are certain criteria that generally
must be present: "First, a party's later position must be clearly
inconsistent with its earlier position;" "[s]econd . . . the party
[must have] succeeded in persuading a court to accept that party's
earlier position, so that judicial acceptance of an inconsistent
position in a later proceeding would create the perception that
either the first or the second court was misled;" and "third . . .
the party seeking to assert an inconsistent position [must] derive an
unfair advantage or [the opposing party must suffer] an unfair
detriment" if an inconsistent position is not estopped.  532 U.S.
742, 749-51 (2001).

        Wabtec's actions clearly satisfy all three factors identified
by the Supreme Court in New Hampshire.  First, its current argument
that plaintiffs are bound by res judicata is utterly inconsistent
with its position before the arbitrator. See Mancini Decl., 7/26/10,

10

Ex. 2, ¶ 5.11.6.1 (stating that "[a]ny right to damages for [Faiveley plaintiffs' losses] must be determined according to the jurisdiction where each specific legal entity operates").  Second, the Tribunal agreed with Wabtec's assertions regarding the preclusive effect of its proceedings, and indicated that Faiveley plaintiffs would be entitled to claim damages against Wabtec in another forum.  See Award ¶ 882 (Faiveley plaintiffs "would not be bound by the res judicata effect of the award and would still be entitled to claim damages against [Wabtec] before another jurisdiction.")  Finally, the Court concludes that Wabtec would obtain an unfair advantage if it prevailed and the Faiveley plaintiffs were barred from receiving damages due to res judicata.  Wabtec succeeded in shielding itself from plaintiffs' claims for damages in the arbitration by persuading the Tribunal that an alternate forum would be available to plaintiffs to assert these claims.  Judicial estoppel precludes Wabtec from arguing otherwise here.[3]

---

[3] Wabtec seeks to evade the application of judicial estoppel by arguing that the doctrine applies to inconsistent factual positions but not to inconsistent legal positions.  While some courts in this district have so held, see U.S. Fidelity & Guar. Co. v. Treadwell Corp., 58 F. Supp. 2d 77, 93 (S.D.N.Y. 1999), it is unclear whether this limitation survives New Hampshire v. Maine, which phrased the doctrine in general terms.  See 532 U.S. at 749.  Regardless, under New York law, whether entities are in privity with one another -- the only contested issue between the parties with respect to the merits of Wabtec's res judicata claim -- is a factual rather than a legal determination.  See Roode v. Michaelian, 373 F.Supp. 53, 55 (S.D.N.Y 1974).

Separately, Wabtec contends that plaintiffs' claims must be dismissed because the relief sought constitutes an impermissible collateral attack on the Tribunal's award. In support, Wabtec contends that the Tribunal permitted Wabtec to continue to use its tainted reverse engineered drawings of Malmö's trade secrets, and instead of enjoining that use, awarded Malmö damages "for the taint." Award ¶ 902; see also id. ¶ 913.  Faiveley plaintiffs dispute this characterization of the award, arguing that the Tribunal refrained from awarding injunctive relief only because it found monetary damages sufficient to compensate Malmö for its losses.  See id.

The Court concludes that this issue is unripe for its consideration, as there is no indication at present that the Court could not award relief in this action that is fully consistent with the Tribunal's award.  In its prayer for relief, the amended complaint seeks, inter alia, compensatory and punitive damages. Compl. at ¶ 38.  The Court sees no necessary contradiction between awarding such relief and the Tribunal's decision not to enjoin Wabtec's continued use of the allegedly misappropriated trade secrets.  The Court reserves judgment on whether and to what extent other forms of relief may constitute an improper collateral attack on the Tribunal's reward until such time as those issues are ripe for its consideration.  In so doing, however, the Court will strongly weigh the fact that the Tribunal's award recognized that most of the

12

damages caused by Wabtec's misappropriation were suffered by Faiveley

plaintiffs, and moreover, expressly contemplated that Faiveley

plaintiffs could bring suit to recover those damages in a later

action.  Id. ¶¶ 881-83, 887.

The Court now moves to consider Wabtec's argument that

Faiveley plaintiffs' claims should be dismissed for failure to join

Malmö, which it contends is a necessary party to this action.  See

Fed. R. Civ. P. 19.  Under Rule 19(a)(1), a party is "necessary" if:

> (A)  in that person's absence, the court cannot accord complete
>      relief among existing parties; or
>
> (B)  that person claims an interest relating to the subject of
>      the action and is so situated that disposing of the action
>      in the person's absence may:
>
>      (i)  as a practical matter impair or impede the person's
>           ability to protect the interest; or
>
>      (ii) leave an existing party subject to a substantial risk
>           of incurring double, multiple, or otherwise
>           inconsistent obligations because of the interest.

Applying Rule 19, the Court concludes that Malmö is not a necessary

party to this action.  First, with regard to sub-section (A) of Rule

19(a)(1), the Court can clearly accord the Faiveley plaintiffs

complete relief without the joinder of Malmö.  Each Faiveley

plaintiff has an individualized basis for its claims against Wabtec,

and Wabtec's ability to assert defenses to those claims is in no way

affected by Malmö's absence.  Further, with respect to sub-section

(B)(i), this action will in no way impede Malmö's interest in its

trade secrets, as -- contrary to Wabtec's assertions -- the Faiveley

plaintiffs' claims raise no issue regarding Malmö's underlying

ownership of those trade secrets. See Compl. at ¶¶ 74-79. Moreover,

Malmö has already fully (and successfully) adjudicated its related

claims against Wabtec, so there is no risk that this action will

prejudice Malmö's legal rights with regard to those claims. Finally,

with respect to sub-section (B)(ii), any relief that the Court might

fashion in this action could easily be tailored so as to ensure

consistency with the Tribunal's award. As such, Malmö's absence from

this action entails no risk that Wabtec will be subjected to

inconsistent obligations.

Additionally, even if the Court were to rule that Malmö is a

necessary party under Rule 19(a), dismissal of this action is not

proper because the Court concludes that "in equity and good

conscience" it should not dismiss the case. See Fed. R. Civ. P.

19(b). Rule 19(b) identifies four factors to guide the Court in

exercising its discretion to allow an action to continue even absent

a necessary party, all of which militate towards not dismissing the

case. First, as explained above, Malmö's absence in this action

presents no risk that either it or Wabtec will be prejudiced. Id. at

19(b)(1). Second, any theoretical risk that Wabtec might be subject

to inconsistent obligations can be wholly foreclosed by the Court's

properly shaping any relief to avoid inconsistency with the

Tribunal's award.  Id. at 19(b)(2).  Third, Malmö's presence is entirely unnecessary to ensure an adequate judgment.  Id. at 19(b)(3).  Finally, and most significantly, if the Court were to dismiss this action for nonjoinder, plaintiffs would be deprived of a forum in which to bring its claims against Wabtec.  Id. at 19(b)(4). Given the Tribunal's ruling that it could not adjudicate Faiveley plaintiffs' claims -- a ruling that Wabtec vigorously urged the Tribunal to adopt, see Award ¶¶ 559, 882 -- the Court in its equity concludes that it should not dismiss this action based on Malmö's nonjoinder.

The Court now moves to Wabtec's assertion that each of plaintiffs' four individual claims must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  First, as to the claim for misappropriation of trade secrets, Wabtec contends that plaintiffs lack standing because they are not the owners of the trade secrets at issue in this case.  The Second Circuit has consistently held, however, that possession of a trade secret is sufficient to confer standing on a party for a claim of trade secret misappropriation. See, e.g., N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999).  As plaintiffs possess various rights to the trade secrets at issue in this action, the Court concludes that they have standing to bring a claim for misappropriation of those rights.

15

Wabtec also claims that the Faiveley plaintiffs lack standing to bring the misappropriation claim because they do not allege a breach of confidence or duty between themselves and Wabtec, but rather rely on a duty owed by Wabtec to plaintiffs' affiliate, Malmö. Wabtec's sole basis for this contention, however, is a comment to the Uniform Trade Secrets Act, which New York has not adopted.   Def. Mem. at 13.   By contrast, courts applying New York law have consistently rejected the notion that only the entity from which a trade secret was misappropriated has standing to bring suit for that misappropriation.   See, e.g., Bus. Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452, 1458 (S.D.N.Y. 1987) (Weinfeld, J.) (licensee had standing even though trade secret was allegedly misappropriated from secret's owner).

While the instant action concededly deals with the difficult issue of determining which entities have standing to sue for misappropriation when there are multiple licensees of trade secrets -- a question on which there appears to be no controlling authority -- the Court concludes that the Faively plaintiffs have alleged a sufficiently concrete and particularized interest so as to establish standing.   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Notably, Faively plaintiffs allege that they have the exclusive rights to manufacture, use, assemble, sell, and market the Products that are the subject of this action.   Courts in this Circuit

16

have held that exclusive rights of this sort, including rights subject to stricter geographical and substantive limitations than those at issue here, constitute a sufficient interest to confer their holder with standing to vindicate injuries to those rights. See Bus. Trends, 650 F. Supp. at 1458 (non-exclusive licensee has standing to sue for trademark infringement because it was the exclusive distributor for a product sold under the trademark); G.H. Mumm Champagne v. Eastern Wine Corp. 142 F.2d 499, 502 (2d Cir. 1944) (Hand, J.) (same for the exclusive distributor of a trademarked product in the Eastern United States).

　　　　Next, the Court turns to Wabtec's argument that Faiveley plaintiffs have failed to state a claim for unfair competition. Under New York law, where an unfair competition claim and a misappropriation claim arise from the same factual predicate, as in this action, "the two claims generally rise or fall together." Scientific Components v. Sirenza Microdevices, Inc., 2006 WL 2524187 (E.D.N.Y. Aug. 30, 2006); see Abernathy-Thomas Engineering Co. v. Pall Corp., 103 F.Supp.2d 582, 599-600 (E.D.N.Y. 2000); Atmospherics, Ltd. v. Hansen, 702 N.Y.S.2d 385, 386 (N.Y. App. Div. 2000). Accordingly, Wabtec urges dismissal of plaintiffs' unfair competition claim on substantially the same basis that it urges dismissal of the misappropriation claim. In particular, Wabtec argues that the only "labor, skills and expenditures" alleged to have been misappropriated

17

in the complaint are those of Malmö, not Faiveley plaintiffs. <u>See</u>
<u>LinkCo v. Fujitsu Ltd.</u>, 230 F.Supp.2d 492, 500 (S.D.N.Y. 2002) ("the
central principle underlying a claim for unfair competition . . . is
that one may not misappropriate the results of the labor, skill, and
expenditures of another.").

Under New York law, however, a party asserting an unfair
competition claim need only have "a colorable property or pecuniary
interest" in the intellectual property at issue to state a claim.
<u>Berni v. Int'l Gourmet Restaurants of Am., Inc.</u>, 838 F.2d 642, 648
(2d Cir. 1988). As such, the possessor of a trade secret states a
claim for unfair competition when it alleges that it was harmed by
the defendant's misappropriation of labor, skills, or expenditures
from the trade secret's owner. <u>See, e.g.</u>, <u>Cargill, Inc. v. Sears</u>
<u>Petroleum & Transp. Corp.</u>, 388 F. Supp. 2d 37, 67 (N.D.N.Y. 2005);
<u>Piccioli A/S v. Calvin Klein Jeanswear Co.</u>, 19 F. Supp. 2d 157, 168
(S.D.N.Y. 1998). The Court need not decide at this time whether this
principle extends to possessors of trade secrets with only a remote
connection to their owner. Faiveley plaintiffs' exclusive rights to
manufacture, use, assemble, sell, and market the Products in North
America are, at least as characterized by the complaint, sufficiently
remunerative to constitute "a colorable ... pecuniary interest" under
<u>Berni</u>. <u>Cf. Roy Export Co. Establishment v. CBS, Inc.</u>, 672 F.2d 1095,
1105 (2d Cir.) (describing unfair competition as a "broad and

18

flexible doctrine ... encompassing any form of commercial immorality" including "misappropriating for commercial advantage ... the property right [of] another"). The Court therefore concludes that Faiveley plaintiffs have stated a claim for unfair competition against Wabtec.

Wabtec next moves to dismiss the two tortious interference counts on the basis that plaintiffs have failed to plead their necessary elements. To establish a claim for tortious interference with prospective economic advantage or prospective business relations, plaintiffs must show that: (1) they "had a [particular and existing] business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003); see Mahmud v. Kaufman, 607 F. Supp. 2d 541, 560 (S.D.N.Y. 2009) (noting that the business relationship at issue must be "particular" and "existing")

The Court concludes that plaintiffs have alleged each of these elements with sufficient particularity to state claims for tortious interference. First, the complaint alleges with particularity no less than ten business relationships with which Wabtec interfered, and includes in-depth discussion of one business relationship in particular, with New York City Transit (NYCT).

Compl. ¶¶ 129, 151, 156, 166, 171.   Second, the complaint makes non-

conclusory allegations regarding Wabtec's awareness of plaintiffs'

pre-existing relationships with these third parties, Wabtec's

interference with those relationships, and the intentionality of that

interference.   Id. at ¶¶ 98-129.   Third, under New York law, the

complaint's assertion that the alleged interference occurred by means

of separate torts, here trade secret misappropriation and unfair

competition, is sufficient to satisfy the "improper means" element of

a tortious interference claim.   See All R's Consulting, Inc. v.

Pilgrims Pride Corp., 2008 WL 852013, at *16 (S.D.N.Y March 28,

2008); Cardiocall, Inc. v. Serling, 492 F. Supp. 2d 139, 153

(E.D.N.Y. 2007).   Finally, as to the fourth element, the Complaint

specifically alleges significant injury suffered by Faiveley

plaintiffs arising from Wabtec's alleged tortious interference,

including the loss of a valuable contract with NYCT.   Compl. ¶¶ 117-

129.

　　　　For the foregoing reasons, the Court, by Order dated August

30, 2010, denied Wabtec's motion to dismiss in its entirety.


Dated:  New York, New York
　　　　November 29, 2010

JED S. RAKOFF, U.S.D.J